OP 08-0018

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 79

_____

OFFICE OF THE STATE PUBLIC DEFENDER
and JEFFREY BRYAN COMPTON,

        Petitioners,

      v.

WHITEFISH CITY COURT,
BRADLEY F. JOHNSON, City Judge,

        Respondent.

O R D E R

and

O P I N I O N

_____

¶1     The Office of the State Public Defender (OSPD) and Jeffrey Bryan Compton (Compton) petitioned this Court for a writ of supervisory control. We issued an order granting the Whitefish City Court, Whitefish City Attorney and/or Attorney General twenty days to respond to the petition. City Judge Bradley F. Johnson (Judge Johnson) filed a pro se response, and Clifton W. Hayden has filed a response on behalf of the City of Whitefish.

¶2     The petition requests that we order Judge Johnson to appoint the OSPD to represent Compton and prohibit the Whitefish City Court from requiring Compton to provide financial information to the City Court in support of the appointment of counsel, and to rule that once the OSPD determined Compton eligible for OSPD representation, the Court has no authority to interfere with the OSPD's representation of Compton.

1

Finally, Petitioners argue that Compton's financial information is confidential under § 47-1-111, MCA, which bars OSPD from disclosing Compton's financial information.

¶3 Compton was arrested and charged with first offense DUI, eluding a police officer and expired vehicle registration on December 5, 2007, and was incarcerated in the Flathead County Detention Center. At his initial appearance before Judge Johnson, Compton was advised of his rights, including his right to counsel, and bail was set. Compton then advised Judge Johnson that he would hire his own counsel. Several days later, at Compton's arraignment before the City Court, Judge Johnson again reviewed Compton's rights with him. Compton continued to unequivocally assert that he would provide his own counsel and rejected the Judge's offer of forms used by OSPD to request appointment of counsel. Compton was initially unable to post bail, but ultimately posted bond with his mother's assistance and was released.

¶4 The affidavit of managing attorney for the Kalispell OSPD office, Nick Aemisegger, Jr. (Aemisegger), is filed with the petition and indicates that on or about December 19, 2007, Compton advised an OSPD attorney that he wanted an attorney appointed for him. On December 21, the office secured a handwritten document from Compton which requests appointment of counsel. The document Compton provided is whimsical in nature, closing with "Yours, Butter True," including a P.S. stating "Whitefish is a railroad town history" and asking for "a lawyer that is not over-run with multi million cases." The document appears to have Compton's signature at the top of the page. OSPD offers that "Butter True" is apparently Compton's nickname.

¶5     At a subsequent omnibus hearing, Aemisegger appeared in City Court and requested permission to file a notice of appearance on behalf of Compton, who was not present.  Aemisegger responded to questions from Judge Johnson indicating he was not retained as private counsel or appearing on a pro bono basis.  No written request of any kind for appointment of counsel was presented, and Judge Johnson refused to enter OSPD's appearance due to the absence of documents demonstrating an attorney/client relationship.

¶6     Thereafter, the handwritten document described above signed by Compton as "Butter True" was faxed by OSPD to Judge Johnson.  When OSPD public defender Brent Getty appeared in City Court on other matters, he asked Judge Johnson about the status of Compton's conditional appointment of counsel.  Judge Johnson indicated he would make a conditional appointment when Compton requested counsel, either in person or by an appropriate written request.

¶7     OSPD counsel John O. Putikka (Putikka) then faxed and mailed a letter to Judge Johnson on January 4, 2008, advising that his office had not received a conditional appointment from the City Court to represent Compton.  Putikka stated the OSPD could not release the Application for Court Appointed Counsel which Compton had completed to Judge Johnson, but that Compton financially qualified for court-appointed representation.

¶8     Judge Johnson responded with a faxed memorandum (Appendix 4 to the Petition) stating that he would not exercise the authority under § 47-1-111(1), MCA, to appoint counsel without credible evidence documenting Compton's financial status.  On January

3

7, 2008, Aemisegger responded with a letter via fax citing *Rios v. Harris*, 2006 MT 256, 334 Mont. 111, 148 P.3d 602, in support of OSPD's position to the contrary.

¶9 According to Aemisegger's affidavit, OSPD made efforts to locate Compton, including contacting his mother, who advised OSPD that Compton was homeless and that she did not know his whereabouts. The affidavit further indicates OSPD received a phone call from Compton on January 7, 2008, in which he informed Aemisegger he was staying at the Poverello Homeless Shelter in Missoula and that he had no transportation to attend the omnibus hearing the following day, but that he had confirmed his request that OSPD represent him. At the January 8, 2008, omnibus hearing, Aemisegger and Putikka attempted to enter an appearance on Compton's behalf. Judge Johnson verbally responded to Aemisegger's January 7, 2008, fax and distinguished the *Rios* case from Compton's because in *Rios*, the judge had made an appointment of counsel, whereas in Compton's matter, Judge Johnson had not yet made an appointment.

¶10 Both Hayden and Judge Johnson indicate that, during the hearing, Putikka shoved a MCA volume over the bench in front of Judge Johnson and demanded Judge Johnson show him the law which the judge was relying upon in denying the appointment of counsel. Judge Johnson began reading § 47-1-111(1)(a), MCA, following which a discussion ensued about how an appointment of counsel is to be initiated, who controls the appointment, formation of the attorney-client relationship and the client's right to confidentiality of the information contained in the request for appointment of counsel. Possible solutions were discussed, including a waiver of confidentiality for the limited purpose of appointment of counsel. Judge Johnson then suggested that OSPD draft and

4

submit a simple document stating that Compton wished court-appointed counsel and that Compton sign the document in his own name. Citing difficulty in contacting Compton because he was homeless, OSPD rejected this and the other proposed solutions. OSPD then filed this petition for supervisory control.

## LEGAL ARGUMENTS

¶11    Citing *Rios,* ¶ 10, OSPD argues that Judge Johnson exceeded his legal authority and is proceeding under a mistake of law. OSPD argues that Judge Johnson has initiated a review process based on his own doubts about the defendant's eligibility and in doing so has violated *Rios*.

¶12    Judge Johnson distinguishes *Rios* because the court there had made an appointment of counsel, then demanded the financial information, whereas no appropriate request for appointment and no appointment of counsel has been made in Compton's case. The Judge further argues that if the power to appoint is simply a pro forma matter with no discretion, the proper remedy is a petition for mandamus from a local district court.

¶13    Assistant City Attorney Clayton W. Hayden (Hayden) argues the normal appeal process affords Compton an adequate remedy because, in the absence of a guilty plea or a plea with reserved issues, the remedy for any error of law in a city court is trial de novo, citing § 46-17-311, MCA. Hayden contends that Compton explicitly rejected appointed counsel twice when he was personally present in City Court, and then, after Compton was released on bond, OSPD produced only a handwritten document that is neither acknowledged nor witnessed, but signed "Butter True," which Hayden concludes is not a

5

credible request for counsel. While Aemisegger and Putikka verbally stated that Compton wishes court-appointed counsel, in the absence of an appropriate oral or written request by Compton, Hayden argues the Judge was correct in denying the OSPD's appearance on behalf of Compton. Because Judge Johnson offered Compton the opportunity to request appointed counsel twice and Compton expressly refused, Judge Johnson was thereafter left with statements from OSPD counsel and a questionable written request.

¶14 Finally, Hayden contends no confidentiality issue exists because applicants frequently fill out such appointment requests and have the City Court transmit them to OSPD. If the requests were confidential, the City Court could have no part in transmitting them to OSPD. Further, even assuming for the sake of argument that the "Butter True" document is genuine, Compton had already disclosed his net worth to City Court, and any confidentiality was thereby waived. Hayden further reasons the standard application form contains an acknowledgment that, in then event of conviction, the signer understands the financial information provided therein may be used to determine ability to pay fines, fees or costs, thus demonstrating that the information is subject to further use.

## DISCUSSION

¶15 Supervisory control is an extraordinary remedy this Court exercises only in extraordinary circumstances when appeal is an inadequate remedy, a court is proceeding under a mistake of law, which if not corrected, will result in a significant injustice. M. R. App.14; *Inter-Fluve v. Montana Eighteenth Judicial District Court,* 2005 MT 103,

¶ 17, 327 Mont. 14, ¶ 17, 112 P.3d 258, ¶ 17.  The threshold petitioners must first meet is demonstrating that the City Court is proceeding under a mistake of law.

¶16     The conditional appointment process was designed to provide counsel to potentially qualified defendants at or prior to their initial appearance before the court. *Rios,* ¶ 6.  Once the appointment is made, it is the responsibility of OSPD to verify whether the defendant meets the criteria for eligibility.  *Rios,* ¶ 7.  In *Rios*, we recognized that OSPD has a duty to make an initial determination of eligibility for court-appointed counsel, and that § 47-1-111(1)(d), MCA, does not impose a gatekeeper role on the courts.  *Rios,* ¶ 11.  Following the initial order to assign counsel, a court's involvement is limited "to those circumstances in which either of the parties request review regarding a defendant's eligibility for public defender services."  *Rios*, ¶ 10.

¶17     However, although we acknowledge these principles from *Rios*, this case is factually and posturally different from *Rios* because the dispute here arises at the very beginning of the process—*prior to* the initial court order for appointment of counsel.  The statute assumes that a court's initial order for appointment of counsel will follow an appropriate request by a defendant for such appointment.  Here, the question is whether an appropriate request was actually made.

¶18     Given Compton's two emphatic refusals of appointed counsel made in personal appearances before Judge Johnson, it was not unreasonable for Judge Johnson to request submission of an appropriate written request from Compton before ordering appointment of counsel to verify Compton's change in position.  Compton had clearly refused appointed counsel, and his "Butter True" request lacked credibility and was

7

inappropriate. Further, the reasons offered by OSPD for its inability to obtain a formal signed request from Compton and to submit such a request to the court are incredulous. If OSPD cannot manage the task of obtaining an appropriately signed request from Compton, its ability to represent him for the remainder of the proceeding should be seriously questioned.

¶19 Further, OSPD's argument that the information on Compton's application for counsel is confidential and cannot be disclosed is unavailing. Although OSPD argues that the information "was confidential under Mont. Code Ann. § 47-1-111," that statute provides no such confidentiality. Though § 47-1-111(2)(c), MCA, provides that information disclosed in the application "is not admissible in a civil or criminal action" except in circumstances not relevant here, the issue in this case does not involve the evidentiary admission of the information in litigation. Rather, the appointment of counsel is at issue here and, for that purpose, the information may be appropriately considered by a court. It is necessarily so—in *Rios* we acknowledged that the court may play a role in resolving problems in the appointment process and, to do so, the information would need to be reviewed. *Rios*, ¶ 11. Any regulation to the contrary is beyond the scope of the statute and invalid.

¶20 In the future, we expect OSPD to be more resourceful in promptly resolving conflicts concerning representation and working with appointing courts in a respectful manner. Under no circumstances is it necessary or appropriate to toss a statute book over the bench toward a judge. Therefore,

¶21     IT IS HEREBY ORDERED that the petition for a writ of supervisory control is DENIED.  If Compton still desires appointment of counsel, he may submit an appropriate request verifying his change of mind, and his eligibility for appointed counsel may be determined in accordance with statute.

¶22     The Clerk is directed to mail a true copy hereof to all counsel of record and to Honorable Bradley F. Johnson, City Court Judge.

DATED this 5th day of March, 2008.

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS